[Sac. No. 980. In Bank.—May 3, 1904.]

F. F. DOLAND, Respondent, v. GEORGE H. CLARK, Mayor, etc., et al., Respondents, and A. J. COFFEE, Appellant.

MUNICIPAL CORPORATIONS—POWER OF CITY COUNCIL—AMENDMENT OF CONTRACTS—DESIGNATION OF FUNDS.—A city council, if it has power to make contracts for the supply of the city with a fire-alarm telegraph system, and with a system of police telegraph, has power also after their execution to agree to amend the contracts by designating, as the charter of the city requires, the fund out of which each system should be paid.

ID.—VALIDITY OF CONTRACTS—SUFFICIENCY OF FUNDS—FUTURE RENTAL—OPTION TO PURCHASE.—A city has the right to make contracts

otherwise unobjectionable, to continue for a series of years, and to provide for payments thereunder at different times. Where the contracts provided for a future monthly rental of each of the telegraph systems, which might continue for five years, subject to the option of the city to purchase either of them, no present liability was created thereunder, either for the rental or for the contingent purchase money. The rental could not begin to accrue until the contract was performed and the systems put into operation.

ID.—SUM PAYABLE UPON CONTINGENCY—DEBT IN EXCESS OF REVENUE.— A sum payable upon a contingency is not a debt, and cannot become such until the contingency happens. In order to render a contract void under the constitution, it must appear that an indebtedness or liability has been incurred for some year exceeding the income and revenue provided for that year; and to render it void under the charter, it must appear that a liability has been created against a fund in excess of the amount of money existing in the fund.

ID.—PRIMA FACIE VALIDITY OF CONTRACTS.—The law presumes all contracts to be fair and reasonable, and to be made by proper authority; and it is sufficient that there may be ample funds to pay the rental when it accrues, if it ever should accrue; and it is only where any future liability of the city under the contract becomes greater than the revenue in any particular year when it accrues that any loss can occur under the contract.

APPEAL from a judgment of the Superior Court of Sacramento County. J. W. Hughes, Judge.

The facts are stated in the opinion.

Frank M. Parcells, for Appellant.

Clarken & Moynahan, Isaac Joseph, and J. H. Liggett, for F. F. Doland, Respondent.

Hiram Johnson, for George H. Clark, Mayor, etc., et al., Respondents.

Clinton L. White, and Arthur E. Miller, *Amici Curiæ.*

COOPER, C.—This case was submitted upon a written stipulation as to the facts, and thereupon judgment was ordered and entered for plaintiff declaring the contracts set forth in the complaint void, and ordering that they be surrendered and canceled. This appeal is from the judgment.

On June 5, 1900, the city of Sacramento, through its board

CXLIII. Cal.—12

of trustees, entered into two certain contracts with appellant which may be considered together as to the legal questions involved. The first contract provided, in detail, for supplying the city of Sacramento with the "Gamewell system of automatic non-interfering fire-alarm telegraph," within twelve months from the date of the contract, the contract to continue for five years after the completion and acceptance of the system, the city to pay three hundred and ninety dollars per month rent each and every month during said contract of lease. The city was given the privilege of purchasing the plant and system at any time during the five years for the sum of nineteen thousand five hundred dollars, provided that if the city should elect to purchase at any time within two years from the date of acceptance, then the amount paid the city as rental should be credited as part of the purchase price, and deducted therefrom.

The second contract provided in detail for supplying said city with the "Gamewell system of police telegraph," within twelve months from the date of the contract, the same to continue five years after the completion and acceptance of the system, the city to pay three hundred dollars per month rent during each and every month of said contract of lease. The city was given the privilege of purchasing the plant and system during the five years for the sum of fifteen thousand dollars, provided that if the city should elect to purchase at any time within two years from the date of acceptance, then the amount that had been paid by the city as rental should be credited as part of the purchase price and deducted therefrom. The board of trustees in making said contracts fully complied with the requirements of the law as to form and procedure, except that at the time of entering into and executing said contracts neither of them specified the fund out of which the rent to accrue thereunder should be paid; however, a few days after the contracts were executed the board of trustees passed a resolution to amend each of them, so that they should specify the proper fund out of which the payments should be made. The contracts were accordingly amended so that the amount to be paid under the former should be paid out of the fire department fund, and the amount under the latter out of the police fund. The contracts as thus amended were approved by the board of trustees and by the mayor of the city.

At the time said contracts were made, and at the time they were amended, there were no funds in the treasury of said city with which to pay the said twenty-three thousand four hundred dollars, the amount of rental that might accrue under the first contract, nor the sum of eighteen thousand dollars, being the amount of rental that might accrue under the second contract, nor were there funds at said times with which to pay any part of said sums that might accrue under either contract. The obligations incurred by said contracts were never submitted to a vote of the people, nor was any provision made for an annual tax to pay the interest on said twenty-three thousand four hundred dollars, or on said eighteen thousand dollars, nor was any sinking fund provided as to the liabilities that might accrue under either of the contracts. The total amount that might accrue or become due under the said contracts for the five years, together with the other indebtedness and liabilities of said city for the year 1900, exceeded the income and revenue of the said city for the said year.

Plaintiff claims that the contracts are void, for the reason that, after being once executed by the board of trustees, the board could not amend them so as to provide the funds out of which the rents should be paid, and for the further reason that they were made in violation of the constitution of the state and the charter of the city. The claim that the board of trustees could not amend the contracts by designating, as the charter of the city requires, the fund out of which the amounts should be paid is without merit. The city could only contract by its proper officers, designated by the charter. The board of trustees had the power to enter into all lawful contracts on behalf of the city. If the board had the power on June 5, 1900, to make the contracts with appellant, it had the power on June 11, 1900, to amend and revise the contracts. We see no reason why the city does not possess the same authority to amend or change a contract within the proper scope of its powers as an individual. No reason is suggested why this is not so, and no authority is cited for such proposition. The contracts, as finally amended and signed on June 11th, were the contracts of the city made on that day. The second contention is, that the contracts violate section 18 of article XI of the constitution of the state, which provides that no

city ''shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for it in such year,'' and of subdivision 22 of section 25 of the city charter, which provides: ''In no case shall a liability be created, or a warrant drawn against any fund beyond the actual amount of money existing in the fund wherewith to meet the same.'' The quoted provision of the constitution and similar provisions of city charters have many times before been here for construction. It was said by this court in *Weaver* v. *San Francisco,* 111 Cal. 319: ''Whoever deals with a municipality does so with notice of the limitation of its powers, and with notice also that he can receive compensation for his labor and materials only from the revenues and income previously provided for the fiscal year during which his labor and materials are furnished; and with the knowledge, too, that all other persons dealing with the municipality have the same rights to compensation, and are subject to the same limitation as he is. Even though at the time of making his contract there are funds in the treasury sufficient to meet the amount of his claim, he is charged with notice that these funds are liable to be paid out for municipal expenditures before his contract can mature into a claim against the city, and if others whose claims have accrued subsequent to his are able to intercept these funds, he is in the same condition as any creditor who has dealt with one whose assets are exhausted before he presents his claim. . . . In dealing with the municipality he must rely upon the integrity of its officers that they will not incur any liabilities during the year in excess of the income and revenues provided for that year, and, as a prudent man, he will ascertain not only the amount of that income, but also the amount of the claims already existing, and of those that are liable to be incurred.''

It was evidently the intention of the framers of the constitution to make the income and revenue of each year pay the indebtedness and liabilities incurred during such year, and that the revenues and income of a subsequent year should not be applied to pay liabilities of a past fiscal year. In this case the contracts were made during the fiscal year ending June 30, 1900. It is evident that they did not create any liability at the time they were executed, except a contingent future liability. The language of the stipulation is, that there were

no funds at the time said alleged contracts were made and
amended. At the time they were made, as amended, there was
nothing due upon them, and there could not be, in the nature
of things, any rent due until after the beginning of the fiscal
year, July 1, 1900. As to whether at any time after the end
of the fiscal year, ending June 30, 1900, there were funds in
the treasury of said city to pay the amounts of rent that might
accrue, the record is entirely silent. The city had the right
to make contracts, if otherwise unobjectionable, to continue
for five years, and to provide for payments thereunder at dif-
ferent times. (*San Francisco Gas Light Co.* v. *Dunn,* 62 Cal.
585; *Riehl* v. *City of San Jose,* 101 Cal. 442.) The monthly
rental under both contracts was six hundred and ninety dol-
lars. This amount would not become due until the appellant
had performed his contracts and put the systems contemplated
by the contracts in operation. The amounts to become due
on completion of the contracts by appellant might never be-
come a liability upon the city. A sum payable upon a con-
tingency is not a debt, nor does it become a debt until the
contingency happens. (*People* v. *Arguello,* 37 Cal. 525.) We
might therefore rest this decision upon the ground that the
law presumes all contracts to be fair, reasonable, and to be
made by proper authority. In order for these contracts to
appear void under the constitution it must appear that an
indebtedness or liability has been incurred for some year ex-
ceeding the income and revenue provided for such year. In
order for them to be void under the charter it must appear
that a liability has been created against a fund in excess of
the amount of money existing in the fund. Neither proposi-
tion appears here. There may be ample funds to pay the
rental when it accrues as provided in the contracts, if it ever
should accrue. We cannot distinguish this case in principle
from *McBean* v. *City of Fresno,* 112 Cal. 166.[1] In that case
the authorities in other states are reviewed and the provision
of the constitution analyzed and construed. It was there held
that a contract made by the city of Fresno with McBean, by
the terms of which McBean agreed to take care and dispose
of the sewage of the city for a period of five years for the
sum of four thousand nine hundred dollars per annum, pay-
able quarterly, was a good and valid contract, subject to there

[1] 53 Am. St. Rep. 191.

being money in the proper fund to make the quarterly payments as they should become due. It was said in that case: "When it is come to consider the contractual relations between the city and appellant, it is at once seen that the city cannot be liable in any one year for more than four thousand nine hundred dollars, an amount far within the revenue derived to the sewer fund; and, further, that it cannot become liable for this amount at all until faithful service is rendered by the contractor each year. If the city in any one year should fail to collect into its sewer fund moneys sufficient to pay the just claims of the contractor, then, as above said, it would be the contractor's loss, the city would be chargeable with no financial responsibility therefor, and the result at the most, so far as it was concerned, would be a failure upon the part of its officers to observe good faith in their dealings." *McBean* v. *City of Fresno* was followed and approved in *Smilie* v. *Fresno County*, 112 Cal. 312, where a contract made with the county of Fresno to build certain additions to the county courthouse within fifteen months from the date of the contract, which was December 14, 1891, for the sum of $99,387, seventy-five per cent thereof in monthly installments as the work advanced, and balance within thirty-five days after completion of the structure, was held not in violation of the constitution. The structure was not finished until November, 1893, and therefore the payments had to be made out of the funds of the fiscal years ending June 30, 1892, June 30, 1893, and June 30, 1894. It was there said: "Whatever doubt may have formerly existed in this state regarding the effect of that clause of the constitution on such contracts has been removed by the late decision of this court in *McBean* v. *Fresno*, 112 Cal. 159,[1] where the court, per Mr. Justice Henshaw, having in view the previous decisions, and the course of adjudication elsewhere, declared the law to be 'that at the time of entering into the contract no debt or liability is created for the aggregate amount of the installments to be paid under the contract, but that the sole debt or liability created is that which arises from year to year in separate amounts as the work is performed.'"

It would be difficult to distinguish the present case from the cases cited. There is not even a suggestion in the stipulation

[1] 53 Am. St. Rep. 191.

that the funds will not be ample to pay the monthly rent as it matures under the contracts. If there should not be sufficient revenues available when any payment becomes due, then the amount due might be lost to appellant. It could not be carried over as a charge against the income and revenues of a succeeding year. It is claimed that the charter of the city, and the provision quoted, is more stringent than the constitution, and that the contracts are void under the charter. This contention is also disposed of by the McBean case cited. The charter of the city of Fresno provides: "The trustees shall not create, audit, allow, or permit to accrue any debt or liability in excess of the available money in the treasury that may be legally apportioned and appropriated for such purposes." The language was said to be harmonious with the constitution and governed by the same rules. The charter of the city of Sacramento provides that no debt "shall be contracted or created against the city, etc." The words "shall be contracted" do not have any greater prohibitive force than the words "create, audit, allow, or permit to accrue" as used in the Fresno charter, or the words "incur indebtedness" as used in the constitution.

In *Weston* v. *City of Syracuse,* 17 N. Y. 112, the language of the prohibition was "shall contract a debt," etc., and the decision was to the same effect as the Fresno case cited.

The judgment should be reversed and the court below directed to enter judgment for the apellant.

Chipman, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is reversed and the court below directed to enter judgment for appellant.

McFarland, J., Van Dyke, J., Lorigan, J., Henshaw, J.

Beatty, C. J., deeming himself disqualified, does not participate.

SHAW, J., dissenting.—I dissent. I have no fault to find with the reasoning of the prevailing opinion from the premises on which it is based. If no provisions of the Sacramento charter were applicable other than subdivision 22 of section 25 referred to in that opinion, there could be no valid objec-

tion to the conclusion there reached, in view of the previous decisions of this court in *McBean* v. *City of Fresno,* 112 Cal. 166,[1] and *Smilie* v. *Fresno County,* 112 Cal. 312. But section 106 of the charter, in my opinion, requires a different conclusion. That section, so far as applicable to the question here, is as follows: "Should the board of trustees at any time deem it necessary for the interest and protection of the city at large, or any portion thereof, or the property or health of the citizens thereof, or any other matter or thing, the object of which would be to advance the interest of the city, to contract and create any debts or obligations against the city for material furnished, and labor and services performed, *without having the funds in the treasury to pay the same,* the said board may enter into contracts, and create debts or obligations, without interest, and are hereby empowered and authorized to levy and collect a special tax annually or in one levy, to pay such debts and obligations so created, and provide the mode and manner for their payment; provided, that no such debts, obligations, or claims *shall be contracted* or created against the city without having first been voted upon by the qualified electors thereof, unless expressly (otherwise) provided by this charter."

It is apparent that this section was not intended to apply to debts or obligations for materials furnished or services performed in carrying on the ordinary current affairs of the city government. The scope of the section and the power of the board are by its language limited to materials and services for some purpose necessary "for the interest and protection of the city at large, or any portion thereof, or the property or health of the citizens thereof," or some matter which would advance the interests of the city. This implies that the matter to obtain which the materials were furnished or services performed is something out of the common—something not necessary in the ordinary and usual administration of the city government.

It is equally clear that the contracts for the materials in controversy were not made in the course of the ordinary business of the city. The leases therein provided for were unimportant to the main purpose of the contract. The total amount of rent to be paid for the fire-alarm system for the entire term,

---

[1] 53 Am. St. Rep. 191.

if the purchase was not made, would be twenty-three thousand four hundred dollars; whereas the purchase price was only nineteen thousand five hundred dollars; and for the police and telegraph system the total rental was eighteen thousand dollars, and the purchase price fifteen thousand dollars. It is at least not probable, and scarcely conceivable, that the board would agree to pay for the rental of such a system for the period of five years a larger sum than the price for which they agreed to purchase the systems, if it had been the purpose simply to procure a lease thereof. It is manifest that the principal purpose to be achieved by the contracts was not the rental of the systems from year to year, but the purchase of the two systems outright. The board deemed it necessary for the protection of the property of the citizens and for the interest of the city to procure these improvements. Although this was a proper thing to do, it was clearly not a part of the ordinary current business. It was an extraordinary and unusual provision for the future, a permanent improvement for the public good, and it comes precisely within the class of improvements contemplated by the section above quoted.

The language of this section contains no words, as do the provisions construed in the McBean case, indicating a purpose to allow the board to look forward to future conditions and to contract debts to become due at some future time, and to become valid if at that time there is money in the treasury wherewith to pay the same, although there is none at the time the debts are contracted. It declares as plainly as language can declare that when the board wants to contract any debt or obligation for the purposes there described, and there is not money then in the treasury sufficient to pay the same, it cannot make the contract without first submitting the question to the electors for their approval. The purpose is clearly shown to prohibit the disposition of the future revenues of the city by anticipatory contracts of this character without the previous consent of the electors. The language of the constitution is, that no city shall *incur* any indebtedness or liability contrary to its provisions, and the section of the municipal corporation act construed in the McBean case declared that the board should not create, audit, allow, or permit to accrue any such debt or liability. Perhaps these words "incur,"

"create," "audit," "allow," and "accrue" may properly be used with respect to the time when a debt or liability matures or becomes payable, but no such meaning can be ascribed to the word "contract" as used in section 106 of the charter in question. A debt is "contracted" when the contract upon which it is based is made. By no stretch of construction can we hold that it is not contracted, in the sense intended by this section of the charter, until some time in the future, when the services or structures contracted for shall have been fully performed or completed. It is clear from the language of the section that the condition upon which alone the board could make the contract without a vote of the electors— namely, the presence of "funds in the treasury to pay the same"—is a present condition which must exist at the time the contract is made.

The section was clearly intended to have a direct effect upon the power to make contracts. In my opinion, the necessary meaning of the charter provision in question is, that the board has no power, where there is no money in the treasury at the time the contract is made to pay the debt contracted, to enter into contracts for the purposes here involved, without the approval of the electors expressed at an election held for that purpose.

Angellotti, J., concurred in the dissenting opinion.

Rehearing denied.