WYKES v. CITY WATER CO. OF SANTA CRUZ et al.

(Circuit Court, N. D. California. January 31, 1911.)

No. 12,697.

1. CORPORATIONS (§ 389*)—DEFENSES—ULTRA VIRES—BURDEN OF PROOF.
   The defense of ultra vires, when interposed in equity, is not regarded with favor, and will be ruled with strictness; the burden of pleading and proving facts to sustain the defense being on defendant.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1568–1571; Dec. Dig. § 389.*]

2. CORPORATIONS (§ 370*)—"ULTRA VIRES."
   In its primary sense, an act is "ultra vires" the powers of a corporation when it is wholly outside the scope of the purposes for which the corporation was formed or has its being, and which it has no authority to perform under any circumstances or in any mode. In a secondary sense, however, an act is ultra vires as it affects the rights of persons without whose consent it may not be done, or when a corporation is not authorized to perform it for the specific purpose, or in the particular manner involved, notwithstanding it may be within the scope of its general powers. If the act is ultra vires in the first sense, the defense is always available; but, when the doctrine is to be applied in the second sense, its availability depends on the circumstances of the particular case.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1511–1515; Dec. Dig. § 370.*
   For other definitions, see Words and Phrases, vol. 8, pp. 7145, 7146.]

3. MUNICIPAL CORPORATIONS (§ 350*)—ULTRA VIRES—QUASI PRIVATE FUNCTIONS.
   Acts of a city in contracting for waterworks to supply itself and inhabitants with water were performed in its quasi private capacity in which the city equally with a private corporation might be estopped to claim that certain of its acts in that behalf were ultra vires.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 879–882; Dec. Dig. § 350.*]

4. MUNICIPAL CORPORATIONS (§ 878*)—ACTS OF CITY—WATER BONDS—ULTRA VIRES—DEFENSES.
   Where a city with power to purchase, hold, and enjoy real estate, and to sell and dispose of the same for the common benefit, in order to obtain a waterworks system, conveyed certain rights of way and other property to a private corporation in order that the corporation might issue bonds secured by a mortgage on the property for an amount required to build the works beyond the limit of the city's indebtedness

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as then fixed and after the city's debt limit was extended, the city regained control of the waterworks system in accordance with a vote of the people, it was estopped to claim that the bonds so issued by such private corporation which the city assumed were invalid, as ultra vires, because the entire scheme was a mere device to evade the debt limit.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1858; Dec. Dig. § 878.*]

In Equity. Bill by George Wykes, successor to the Holland Trust Company of New York. as trustee, against the City Water Company of Santa Cruz and the City of Santa Cruz to foreclose a mortgage given by the water company to secure the payment of bonds issued by it. Decree for complainant.

This is a bill in equity to foreclose a mortgage or deed of trust given by the defendant the City Water Company of Santa Cruz, hereinafter referred to as the "water company," to the Holland Trust Company of New York, the predecessor in interest of the complainant, whereby the water company conveyed to said trust company certain property, hereinafter more particularly referred to, as security for the payment of bonds of the water company issued thereunder and now outstanding.

Picked out of a mass of somewhat tangled detail unnecessary to recite, the material facts, as to which there is no conflict, are these: The defendant the city of Santa Cruz, for convenience hereafter designated the "city," a municipal corporation of the fifth class, having full power for the purpose, determined by proper action of its common council to acquire and construct a permanent system of waterworks, to be used by the municipality for supplying its inhabitants with water. A special election was duly held, whereat a proposition was voted by the electors creating a bonded indebtedness for the purpose of $300,000; that being the limit of indebtedness which the city was, under the law as it then stood, entitled to create upon the assessed valuation of property within the municipality. These bonds were duly issued, and a portion of them sold, with the proceeds of which the city acquired certain water rights, reservoir sites, and rights of way as a nucleus for the proposed plant. Difficulties then arose in disposing of the remainder of the bonds, and it was found that the fund was insufficient to carry out the proposed work. To avoid these difficulties, and particularly to evade the then limitation against incurring a greater indebtedness, the city authorities enlisted the aid of Coffin & Stanton, a New York firm of financiers, as a result of which that firm took over the unsold bonds and entered into certain agreements with the city, whereby (ignoring unnecessary details) the city granted to it the right and franchise for the construction of a system of waterworks therein, for which, when completed and turned over to it, the city was to pay the sum of $320,000. The construction of the works was to be had through the agency of a corporation to be organized for the purpose and styled the "City Water Company of Santa Cruz," to which agency was to be assigned the franchise for constructing the works, and to which the city was to transfer its title to the water rights, reservoir sites, rights of way, and other rights theretofore acquired by it, and it was provided that the water company should, upon its organization, cause to be executed a trust deed or mortgage upon all the property so to be conveyed to it by the city in an amount not to exceed $400,000, and issue bonds thereunder bearing interest at a rate not to exceed 6 per cent. These bonds the water company was to issue and deliver to Coffin & Stanton, as necessity required during the progress of the work in sufficient amount to protect that firm, who were to furnish the funds for payment of construction, but not to exceed in all $320,000 of the bonds except upon contingency of alteration or extension of plan as provided for therein. It was then provided that, when Coffin & Stanton should have received the stipulated amount of bonds, and the waterworks were completed, that firm should deposit with a trust company, to be agreed upon, $270,000 of such bonds to be held in trust or escrow for

·the securing of the city against a like amount of the water bonds therefore issued by it and sold to or taken over by Coffin & Stanton as heretofore stated; ·and finally it was provided that, when said system of works should be fully completed, the water company should convey the same, with all its property and rights of every kind pertaining thereto, to the city in absolute perpetuity, but subject, however, to the mortgage or deed of trust so to be executed by the water company, which obligation and the debt secured thereby the city was to assume and pay.

These agreements were fully and in good faith carried out in all their details; the grant of the franchise to build the works was had; the defendant water company was organized with all legal formality; a deed from the city of its water rights and property was executed to the water company; the mortgage of the latter to the Holland Trust Company was duly and regularly made, and its bonds issued thereunder and delivered as required; the waterworks constructed and installed strictly in accord with the specifications therefor and accepted by the city; and in due course the water company executed to the city, and the latter accepted, a deed conveying the completed works with all property and rights of every kind included in the system and then held by the water company. This deed was made on March 29, 1892, and formal acceptance thereof had on that date, and the deed was subsequently recorded in the records of the county of Santa Cruz at the request of the then city clerk; and since said date and the taking over of the property thereunder the city has operated, used, and enjoyed the waterworks system thereby conveyed and its revenues for its own exclusive benefit and that of its inhabitants. The deed expressed no consideration passing from the city to the water company, but it recited the existence of the mortgage or deed of trust given by the latter, and the habendum of the deed reads: "To have and to hold the same and every part thereof unto the said party of the second part, its successors and assigns, subject, however, to said mortgage or deed of trust, and all the obligations thereby imposed, which bonds, mortgage or deed of trust, and obligations, the party of the second part agrees to pay and perform."

Subsequently, on March 13, 1894, the act of the city authorities in accepting this deed with such assumption of the obligation therein recited was by the council referred to the voters of the city for their ratification or rejection in a refunding proposition which when submitted specifically described such obligation and the manner in which it had been incurred and recited: "Which bonds outstanding, were at the time of the conveyance by the City Water Company of Santa Cruz to the city of Santa Cruz, of the property known as the City Waterworks, and now are, a valid lien and charge upon said property known as the City Waterworks and became thereby a part of the bonded indebtedness of the city of Santa Cruz." At such election the action of the city authorities was ratified by a vote of more than two-thirds of the electors.

Prior to the date of the acceptance of this deed and the assuming of the obligation imposed thereby, the law fixing the limit of indebtedness authorized to municipalities of the fifth class had been amended so as to increase the maximum allowed on its taxable property from 5 per cent. to 15 per cent.; and there is nothing appearing in the record to indicate that the obligation thus assumed, together with those already existing, was in excess of the total indebtedness the city was then privileged to create.

The bonds involved are what remain unliquidated of those issued by the water company under the circumstances above set forth. Upon those bonds the city from the date of taking over the waterworks down to November 1, 1893, paid the interest as it accrued, but has defaulted therein since that ·date. Prior to that date the bonds had passed from the ownership of Coffin & Stanton into the hands of the present holders for value, and it is in pursuance of proper demand from the latter that the trustee brings this suit.

The defendant water company is the corporation organized in pursuance of the agreements above referred to and whose bonds are the subject of the litigation. That defendant has failed to answer the bill, and is in default.

.The defendant city has answered and interposes the defense of ultra vires ·as to the various acts of its officers involved in the controversy. It has not

taken or presented any affirmative evidence on its behalf, but rests its defense upon the facts established by the evidence taken in behalf of complainant.

Percy R. Wilson, W. W. Middlecoff, and Edwards Mills Adams, for complainant.

James G. McGuire and Carl Lindsay, for defendants.

VAN FLEET, District Judge (after stating the facts as above). The defense of ultra vires interposed by the city is one which does not appeal strongly to a court of equity in a case such as here disclosed. It is purely legal in aspect and in a sense technical, invoking as it does a harsh and unyielding bar which, if sustained, necessarily precludes all consideration of the ethical features of a case and is thereby calculated to result in wrong to innocent parties. Hence it is that the burden of pleading and proving the facts to sustain it rests peculiarly with the defendant and is to be ruled with strictness. Brown v. Board of Education, 103 Cal. 531, 37 Pac. 503; Doland v. Clark, 143 Cal. 180, 76 Pac. 958; City of Newport News v. Potter, 122 Fed. 324, 58 C. C. A. 483.

The doctrine of ultra vires is applied in different senses. In its primary sense an act is "ultra vires" the powers of a corporation when it is wholly outside of the scope of the purposes for which the corporation was formed or has its being, and which it has no authority to perform under any circumstances or in any mode. Such an act is simply void, and the transaction builded upon it must fall as to all parties concerned. But in a secondary sense an act is also said to be "ultra vires" as it affects the rights of parties without whose consent it may not be done; or when the corporation is not authorized to perform it for the specific purpose or in the particular manner involved, notwithstanding it may be within the scope of its general powers. In applying the doctrine, these distinctions should be kept in view, as the rights of parties dealing with the corporation may differ according as the doctrine is applicable in the one sense or the other and as its application may be affected by the relationship of those dealing with it. When it is applicable in the first sense, the defense is always available; but, when it is to be applied in the second, its availability is dependent upon the circumstances of the particular case.

As stated by Mr. Justice Comstock in Bissell v. Michigan Southern R. R. Co., 22 N. Y. 262, in discussing this second phase:

"Circumstances may, and often do, exist which estop the offender from taking advantage of his own wrong. The contract may be entered into on the other side without any participation in the guilt, and without any knowledge even of the vice which contaminates it. An innocent person may part with value, or otherwise change his situation, upon the faith of the contract."

And, as said in Miners' Ditch Co. v. Zellerbach, 37 Cal. 543, 99 Am. Dec. 300:

"From the cases cited, it very clearly appears that the question, as between stockholders and the corporation, is a very different one from that which arises between the corporation itself and strangers dealing with it, and the principle established, where the contest arises between strangers and the corporation, is whether the act in question is one which the corporation is not authorized to perform under any circumstances, or one that may be per-

formed by the corporation for some purposes, but not for others. In the former case the defense of ultra vires is available to the corporation as against all persons, because they are bound to know from the law of its existence that it has no power to perform the act. But in the latter case the defense may or may not be available, depending upon the question whether the party dealing with the corporation is aware of the intention to perform the act for an unauthorized purpose, or under circumstances not justifying its performance. And the test as between strangers having no knowledge of an unlawful purpose and the corporation is to compare the terms of the contract with the provisions of the law from which the corporation derives its powers, and, if the court can see that the act to be performed is necessarily beyond the powers of the corporation for any purpose, the contract cannot be enforced; otherwise, it can."

These considerations would seem to have peculiar application to this case, since it appears without controversy that the bonds in suit are now in the hands of strangers to the transaction, taking without notice and for value; and the contract which gave rise to their issuance and sale has been fully performed, with the result that the city has received the full benefit of that performance and the fruits of such sale. In such a case, if the acts of the city are not to be held void in the extreme sense first indicated, there is, upon the facts, strong and persuasive ground for holding that it cannot be heard to impeach their validity at all.

That a municipal corporation equally with a private one may be estopped from denying the validity of its contract made within the general scope of its powers, although not entered into or carried out in the precise or formal manner required by law, is well established; and especially is this true with reference to a contract relating to its proprietary as distinguished from its governmental functions—and the contract here involved falls within the latter category.

"A city has two classes of powers: The one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietary, quasi private, conferred upon it not for the purpose of governing its people, but for the private advantage of the inhabitants of the city itself as a legal personality. * * * In contracting for waterworks to supply itself and its inhabitants with water, the city is not exercising its governmental or legislative powers, but its business or proprietary powers. The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city itself and its denizens. 1 Dill. Mun. Corp. 27; City of Cincinnati v. Cameron, 33 Ohio St. 336, 367; Safety Insulated Wire & Cable Co. v. City of Baltimore [66 Fed. 140, 13 C. C. A. 375] supra, and cases there cited." Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 282, 22 C. C. A. 181, 34 L. R. A. 518.

And upon the doctrine of estoppel as applied to such a contract it is said in Westbrook v. Middlecoff, 99 Ill. App. 327:

"While courts should maintain with vigor the limitations which the statute has placed upon corporate action, whenever it is a question of restraining a city council in advance from passing beyond the bounds of statutory requirement, they should, on the other hand, enforce against the city contracts of which it has received the benefit, if the subject-matter of the contract falls within the charter powers of the city. Where the statute authorizes a municipal corporation to exercise a certain power, but specifically regulates the mode in which it may be exercised, an attempt on the part of the municipal officers to override the regulations and exercise it in another manner will be restrained; but when the officers have so acted, and the municipality has received the benefits of a contract thus irregularly entered into,

it is estopped from setting up the irregular exercise of the power when called upon to pay for what it has received. East St. Louis v. East St. Louis Gaslight Co., 98 Ill. 415 [38 Am. Rep. 97]; Badger et al. v. Inlet Drainage Co., 141 Ill. 540 [31 N. E. 170]; Bradley v. Ballard, 55 Ill. 413 [8 Am. Rep. 656]; First National Bank v. Keith, 183 Ill. 475 [56 N. E. 179]; Village of Harvey v. Wilson, 78 Ill. App. 544; Dillon's Municipal Corporations, § 444, etc. The proposition is thus tersely stated by Justice Scholfield in Badger et al. v. Inlet Drainage Co.: 'The doing of a thing in a proper way is a legitimate charge upon the revenues of the municipality; and so, when it is done and is accepted and enjoyed by the municipality, the municipality gets what it had authority to get in a different way, and it should therefore pay for it what it would have paid, had it got it in the right way.' "

In Illinois Trust & Savings Bank v. City of Arkansas City, supra, the principle is thus stated:

"There is another and conclusive reason why this city cannot maintain any of the defenses that it has interposed in this suit. It is that it cannot accept the benefits and repudiate the burdens of its contract. It is that it cannot be heard to deny the truth of the representations of the existence and of the execution of this contract, which its records and its conduct have constantly made, and in reliance upon which the gas company and the water company constructed and extended the waterworks, and the bank and the bondholders loaned their money. No principle is more universal in the jurisprudence of civilized nations, no principle is more equitable in itself, or more salutary in its effects, than that no one may, to the damage of another, deny the truth of statements and representations by which he has purposely or carelessly induced that other to change his situation. This principle is equitable because it forbids the untruthful or culpably negligent deceiver from profiting by his own wrong, at the expense of the innocent purchaser or contractor who believed him. It is salutary because it represses falsehood and fraud. Paxson v. Brown, 27 U. S. App. 49, 60, 61 Fed. 874, 881, 10 C. C. A. 135, 143; Pence v. Arbuckle, 22 Minn. 417; Cairncross v. Lorimer, 3 Macq. 827, 829; Dickerson v. Colgrove, 100 U. S. 578, 582 [25 L. Ed. 618]; Faxton v. Faxton, 28 Mich. 159; Kirk v. Hamilton, 102 U. S. 68, 75 [26 L. Ed. 79]; Evans v. Snyder, 64 Mo. 516. This principle is applicable to the transactions of corporations as to those of individuals. As Mr. Justice Campbell well said in Zabriskie v. Railroad Co., 23 How. 381, 400, 401 [16 L. Ed. 488], in which the Supreme Court held that a corporation was estopped to question the validity of its void guaranty, because it had permitted the circulation of the bonds that carried it: 'A corporation, quite as much as an individual, is held to a careful adherence to truth in all their dealings with mankind, and cannot, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct had superinduced.' "

See, also, City of Litchfield v. Litchfield Water Co., 95 Ill. App. 647; Higgins v. San Diego Water Co., 118 Cal. 524, 45 Pac. 824, 50 Pac. 670.

When the specific contentions of the defendant city are examined in the light of the foregoing principles, I think it will readily be perceived that the case does not present an instance of the absence or want of power in the municipality to do the acts complained of such as to make available the defense of ultra vires in its primary sense; but merely an instance of the irregular use of existing power by a departure from the formal requirements of the law governing their action—in no respect sufficient to avoid the doctrine of estoppel above stated. Let us see.

The first proposition of counsel is that the city had no authority to sell, alienate, or mortgage the property in question, and that the ac-

tion of its mayor and common council in that regard was ultra vires. By this is clearly not meant that there was no power in the city to dispose of the property under any circumstances, for there was. Its charter expressly gave it power to "purchase, receive, hold and enjoy real estate and personal property, and sell, and dispose of the same for the common benefit." St. Cal. 1876, p. 189.

But the argument is that the property was acquired by the city charged with a public trust, that of being used by it for the purpose of building waterworks, and that the purpose was so expressed in the deeds by which it was conveyed by its former owners, and that its attempted conveyance to the water company was in violation of that trust.

But, in the first place, having general power to alienate its property for the common good, its deed was not void, even if voidable, since the purpose intended was the common good. In the next place, the conveyance, while not perhaps in pursuance of the method of securing waterworks contemplated by those selling to the city, was not in derogation of the trust, since the very purpose of the conveyance was intended as a means to secure the performance of that trust.

But, lastly, those conveying the property to the city are not here complaining of the act, and it does not lie with the city to make the objection. Moreover, the purpose sought has been accomplished, even if irregular, and no one therefore has been injured by the method pursued.

But it is argued that the conveyance to the water company being had to enable the latter to mortgage the property was in effect, though indirectly, a mortgaging of the property by the city; and that this it had absolutely no power to do, the right to mortgage not being included in the power to sell.

But assuming that the transaction amounted in effect to a mortgaging of the property by the city, and was not expressly authorized, it was had for a proper municipal purpose, that of securing the building of waterworks, something the city was expressly authorized by its charter to do (St. Cal. 1876, p. 192), and, the purpose having been accomplished, the transaction, regardless of its mere form, will be upheld (Adams v. Memphis & L. R. Co., 42 Tenn. 645). And see Middleton Sav. Bank v. City of Dubuque, 15 Iowa, 394; Adams v. City of Rome, 59 Ga. 766; 2 Dill. Mun. Corp. 676.

It is further contended that by its contract with Coffin & Stanton and the conveyance of its property to the water company the city was attempting to evade the Constitution and the statute limiting the amount of indebtedness it was authorized to incur, and, being in direct violation of law, was absolutely void. It may be conceded that the transaction in its inception was without sanction of law and could have been enjoined; and that, had its effect been to create at the time an indebtedness in excess of the legal limit, it would not have been binding on the city. But it is clear that the city never became obligated to pay any indebtedness incurred under the contract until it voluntarily took over the completed works and assumed the obligation, and possibly—a question which is immaterial—not until the action of its coun-

cil was ratified by the vote of its electorate. Until then its obligation was wholly contingent. Doland v. Clark, 143 Cal. 176, 76 Pac. 958. At those dates, as we have seen, the indebtedness it was authorized to create had been so enlarged by the statute that the limit was not exceeded by its action.

There are some further points made; but they are all covered by the general considerations above stated, and present nothing substantially tending to sustain the defense set up, or take the case out of the rule of estoppel above stated.

It results that a decree should go in favor of the complainant, and it is so ordered.