[Civ. No. 141.  Fourth Appellate District.—December 10, 1930.]

A. D. MacLEOD, Appellant, v. JOSEPH S. LONG, as Mayor, etc., et al., Respondents.

Hanley & Shannon and Whitehead, Bole & Blythe for Appellant.

Eugene Best, City Attorney, and Loyal C. Kelley for Respondents.

CARY, P. J.—Plaintiff filed a petition against the defendants Joseph S. Long as mayor of the city of Riverside and president of the board of public utilities of said city; H. W. Pierson, as auditor of said city, and Harry N. Dunbar, as treasurer of said city praying that the defendant mayor and the defendant auditor be commanded to issue, sign, countersign and deliver to plaintiff two warrants upon the treasury of said city, one directing the treasurer to pay out of the funds of the water department the sum of $4,350.65 as authorized by resolution of the board of public utilities of said city, and the other to pay a like sum out of the funds of the electric light department of said city. The defendants filed both general and special demurrers to the petition and also motions to quash. The motions to quash were granted, the proceedings dismissed, and from the order thus made plaintiff appeals.

The petition in substance alleges that the department of public utilities of the city of Riverside is under the control of the board of public utilities consisting of five commissioners, including the mayor; that the electric light department and the water department of said city are subdepartments of the department of public utilities; that on November 16, 1928, said board of public utilities entered into an agreement with plaintiff employing him to make a complete audit of the books of both the electric light and the water departments; that between November 16, 1928, and February 8, 1929, plaintiff did make such audit and duly performed all the conditions required by said contract; that the total amount due plaintiff by reason thereof was the sum of $23,716.25; that certain progress payments having theretofore been made by said board, plaintiff on February 8, 1929, presented to said board a final audit, together with his claim for services rendered between January 24, 1929, and February 7, 1929, and amounting to $8,701.30, the same being approved by the superintendent of the board of public utilities and by the auditor of the city; that said claim was duly approved by the board of public utilities and said approval indorsed thereon by the then mayor as

president of said board and ordered paid, fifty per cent out of water department funds and fifty per cent out of electric light department funds, and warrants were ordered drawn; that thereafter defendant Long was, at a recall election, duly elected mayor of said city and thereafter plaintiff demanded of said defendant Long and the auditor of said city that they issue, sign and countersign these warrants and deliver same to plaintiff, but that each has refused so to do.

Defendants confine their objections to the sufficiency of this petition to three points: (1) that the board had no power to appoint an accountant, (2) that it had no power to allow a claim for such work and (3) that such claim could not be paid from the funds of the light or water departments.

The charter of the city of Riverside in effect at the time is to be found in the 1907 statutes, page 1277. The powers of the several officers and boards, in so far as pertinent to the questions here presented, are as follows: The board of public utilities consists of the mayor and four commissioners appointed by him. It has exclusive control and management of all city owned public utilities, including the sale and distribution of electric, water, etc., produced therefrom; except as otherwise provided by charter regarding the city auditor his deputies and clerks, it may appoint and fix the compensation of all persons employed by said department; it shall fix annually, subject to the approval of the council, the rates to be charged for light, water, etc.; all money received by the board shall be paid over daily to the city treasurer and deposited to the credit of the electric fund; the money from said fund shall be paid out only on demands approved first by the superintendent and by the city auditor and then by vote of not less than three members of the board, which fact shall be indorsed on the demand by the mayor as president of the board; no money from this fund shall be paid for any purpose except necessary expenses of conducting the department and making improvements and additions to the plant or plants; the board shall also possess such other powers as may be necessary to carry out any of the duties prescribed.

The auditor is the general accountant and fiscal agent of the city and shall exercise superintendence over all officers and employees of the city charged with the receipt of city revenues; he shall keep under his direct control all financial records, books and accounts of the departments, boards and officers of the city (with the exception of certain enumerated officers not material to the case at bar); monthly and annual reports shall be made by him of each department to the council; his authority over such records of each department, the manner of keeping same and the control of the deputies and clerks engaged in such work shall be paramount and not subject to the authority of the board at the head of such department; he "shall have entire charge and control of all records, books, documents and accounts relating to property and the receipts and expenditures and all accounts of purchases and sales of" the department of public utilities; he shall make a complete inventory of all property belonging to that department and keep it posted up to date; he shall accurately apportion all income and expenditures of that department so that "operating expenses, repairs, betterments, extensions, replacements, depreciation, cost of operation, power and fuel, the income from various sources and the net income and real value of the plant can always accurately be told".

The mayor is given general supervision over all departments and charged with the duty of seeing that they are honestly conducted. It shall be his duty to have the books of all departments pertaining to finances of the city audited by a competent person annually and he may at any time investigate, through persons appointed by him, the accounts of any department. The expense therefor shall be paid out of the general fund.

The common council of the city have the power to investigate any department of the city government. The mayor and council together shall have the power to manage and control the city's finances, examine accounts against the city and allow or reject them, and to do all other acts required by the charter or incidental to any power conferred upon them.

Plaintiff concedes that the board has no *express* power to employ plaintiff, but contends that such power is

implied since it is necessary to the exercise of certain powers expressly granted to the board, to wit: The exclusive management and control of all city-owned public utilities and the determination of the rates to be charged the city for street lighting. Plaintiff argues that these matters require intimate knowledge of the income of the department and the requirement for improvements, that the board certainly cannot be expected to gather this data personally nor should it be compelled to accept and rely upon data furnished by the auditor since he is not responsible to the board and they have no control over him and therefore, having the implied power to employ plaintiff to audit the accounts of the department, the claim was properly payable from the funds of the electric and water departments.

It will be observed that by the express mandate of the charter, the keeping of the books, accounts and records of the public utilities department has been taken out of the hands of the public utility board and placed under the supervision of the city auditor whose control in these matters is expressly declared to be paramount. Such matters as cost finding, figuring depreciation, maintenance charges, etc., are therefore no part of the work of the board. The functions of the board of public utilities are confined to the operation, upkeep, improvement and extension of the physical properties and the fixing of rates, subject in the latter instance to the approval of the common council. To hold, therefore, that because the city auditor, whose duty it is under the charter to furnish this data, is not under the control of the board the board should not be required to accept such data from him, but instead should have the implied power to have their own audit made would at once do violence to the clear intent of the charter. The very purpose of an audit is to get an unprejudiced report on the exact condition of affairs. The board of public utilities is charged with the duty of collecting the revenues of the public utility department. Therefore, the wisdom of the framers of the charter in placing in the hands of one over whom the board has no power or control the duty of auditing their accounts is quite apparent. Furthermore, the charter expressly provides methods by which, should the executive or legislative heads of the city desire an investigation of the conditions of the public utilities department,

the same may be procured and the expense thereof charged to the general fund of the city. This itself is another clear expression of the intention of the framers of that document to put such additional investigation in the hands of the mayor and the common council.

Plaintiff argues that the activities of the board of public utilities are proprietary and not governmental in their nature and hence that the powers of the board should not be strictly construed. Assuming, without deciding such to be the rule, yet here the charter provisions are so plain that to hold the board to have the powers asserted would at once do violence to the plan set up in the charter.

Plaintiff contends that on a motion to quash, the lack of power of the board to enter into such a contract cannot be questioned but that it is a matter of proof to be shown by the defendant. In support of this contention he cites *Brown* v. *Board of Education*, 103 Cal. 531, 534, 535 [37 Pac. 503] , *Morgan* v. *Board of Education*, 136 Cal. 245, 246 [68 Pac. 703], and *Doland* v. *Clark*, 143 Cal. 176 [76 Pac. 958]. But in each of these cases plaintiff, instead of applying for a writ of mandate, had sued the defendant on a contract which was presumably within the power of the defendant to make. In the case at bar, however, we are considering an application for a peremptory writ of mandate. Such form of proceeding must be predicated upon the existence of a duty on the part of defendants to perform an act concerning which they have no right to refuse (Code Civ. Proc., sec. 1085). The burden is, therefore, upon the plaintiff to prove the existence of such right rather than upon the defendants to disprove the same. The fact that the alternative writ is couched in the usual language to the effect that the defendants either perform the act required or show cause before the court why they have not done so, by no means shifts the burden of proof from the shoulders of the plaintiff to those of the defendants.

The order is affirmed.

Barnard, J., and Marks, J., concurred.