[Sac. No. 3199. In Bank.—November 4, 1921.]

THEODORE W. CHESTER, etc., Appellant, v. D. W. CARMICHAEL et al., Respondents.

[1] MUNICIPAL CORPORATIONS—CONVEYANCE OF LAND FOR PARK—CON-
DITIONS SUBSEQUENT—CONSTITUTIONAL LAW.—The acceptance by
a city of a deed to a tract of land upon the condition that the
land should revert to the grantors unless the city should expend
not less than five thousand dollars annually in improving it as a
park, the total cost of the improvement aggregating fifty thousand
dollars, created a liability to the grantors within the meaning of
section 18 of article XI of the constitution, which precludes any
city from incurring any indebtedness or liability in any manner
or for any purpose exceeding in any year the income and revenue
provided for such year without the assent of two-thirds of the
qualified electors thereof.

APPEAL from a judgment of the Superior Court of
Sacramento County. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

Theodore W. Chester, *in pro. per.*, and Meredith, Landis
& Chester for Appellant.

R. L. Shinn and White, Miller, Needham & Harber for
Respondents.

ANGELLOTTI, C. J.—Plaintiff, a taxpayer of the city
of Sacramento, instituted this action on behalf of himself
and all other taxpayers, seeking thereby an injunction pro-
hibiting the city of Sacramento and various officers thereof
from carrying out the provisions of a certain deed con-
veying real property to the city for park purposes, and to
have such deed declared void, the theory of the action being
that such action on the part of the city would be in violation
of the provision of our constitution, which declares that
"No county, city, town, . . . , shall incur any indebtedness
or liability in any manner or for any purpose exceeding in

1. Creation of indebtedness within the meaning of debt limit
provisions, notes, 44 Am. St. Rep. 229; 3 L. R. A. (N. S.) 684; 37
L. R. A. (N. S.) 1058; L. R. A. 1917E, 437.

any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also provision to constitute a sinking fund for the payment of the principal thereof on or before maturity." (Const., sec. 18, art. XI.) Demurrers to the complaint were sustained, and judgment thereupon given for defendants. This is an appeal by plaintiff from the judgment.

The material facts shown by the complaint are as follows: On or about December 1, 1919, defendants George H. Cutter and Carrie M. Cutter, his wife, and defendant Hickman Investment Company, a corporation, executed and delivered to the city of Sacramento, which accepted the same, a conveyance of an oblong tract of land in Sacramento some 360 feet in width by from 2,696 to 2,772 feet in length, one-half of which was owned by the Cutters and one-half by the Hickman Investment Company. The conveyance was to the city, its successors and assigns forever, for park and recreation purposes. It was declared therein that it was executed "for and in consideration of the covenants and conditions" expressed therein. The conveyance was declared by its terms to be "subject to the following express conditions subsequent," nine such conditions being stated. These were that the premises shall be used and maintained by the city permanently as a public park or as a public park and playground, known and designated as "Wm. Curtis Park"; that the land shall be divided into three subdivisions as shown on a map attached, each subdivision to have a driveway extending through the same, open for public traffic, as indicated upon said map; that the city shall lay out and maintain a driveway at least twenty-five feet wide on the eastern outer edge of the property, from the northerly to the southerly portions thereof, and a like driveway on the western outer edge, the same to be public and open to the streets which may be constructed upon the adjoining property and extending to said property; each of the three subdivisions shall have next to the two outer or main driveways a border of forty feet in width to be improved by the city or its representatives "to lawns and shrubbery and to be

used as a park," the remainder or interior of each subdivision "to be used as a park or for playground purposes, but playgrounds proper are not to extend on the forty (40) foot borders"; the permanent improvement within five years of said driveways, and the express provision that "the owners of property bordering or abutting on said park are not to pay for any such driveways, or for the curbs or gutters on either side of such driveways," and that "in the event that any assessments should be levied against" such owners for any of such purposes, the same shall be paid by the city; · that "there shall be expended by" the city "a minimum sum of five thousand dollars ($5,000) per year for the improvement of the parks and playground in said park"; that "the first five thousand dollars ($5,000) is to be expended during the year beginning January 1, 1920; and a like sum is to be expended each year thereafter until the entire property has been improved as a park"; and that the taxes which became a lien on the first Monday of March, 1919, shall be paid by the city. It was then provided that should the city "fail to conform to or comply with any of the above conditions," the grantors, their successors or assigns, "may, at any time thereafter, give written notice" to the city of such failure, and if the same are not complied with within six months thereafter, "then said property shall revert to and become again the property of" the grantors, their successors or assigns. The cost of the work of construction and improvement required will exceed the sum of fifty thousand dollars, and the cost of maintenance will exceed five thousand dollars per annum. Defendants have commenced the work of improvement, having already expended therein over one thousand dollars from the income and revenue of the city for the fiscal year 1920, and unless restrained by the courts will carry out all the terms and provisions of the deed. All the funds of the city for the year 1919 were exhausted before December 31, 1919. All of the moneys incident to the proposed work will be paid out of revenue and income received during the year 1920 and each subsequent year. There has been no assent on the part of the qualified electors of the city, or any part thereof, to the carrying out of the proposed plan or any part thereof.

From the foregoing it is apparent that in so far as the grantors are concerned the city, in consideration of the con-

veyance, has agreed, among other things, to expend a minimum sum of five thousand dollars annually in the work of improving the park site in a designated way and in constructing two driveways for public traffic through the same, and also driveways at least twenty-five feet wide along the whole length on each side, "the same to be public and open to the streets which may be constructed upon the adjoining property," free of cost of any kind to any owner of property bordering or abutting on the park. This work in the aggregate will cost, it is alleged, fifty thousand dollars. Whether or not the performance of this obligation will benefit the city is an immaterial matter in this controversy. The obligation created by the contract is one in favor and for the benefit of the grantors, who have fully executed their part by the conveyance and delivery of the property, their successors and assigns. As a matter of fact, the provisions of the conveyance indicate that the doing of the proposed work in the manner provided was deemed by the grantors to be of special value to the property adjoining on both sides, and the undertaking by the city to do such work was the real consideration for the transfer. This is especially true as to the driveways and the forty-foot strip of garden on each side especially reserved from playground or recreational uses. Performance of the obligation would be, in substance and effect, payment to the grantors, in the way stipulated in the deed, for the property conveyed by them. By means of conditions subsequent expressed in the deed, the property conveyed was practically pledged to the grantors as security for the performance of the undertaking, the title to revert to them, their successors or assigns, in the event of nonperformance, if they so elect. It may be assumed that the city cannot be held liable in damages for failure to carry out this contract, or specifically compelled to perform, and that the only penalty for failure to perform is the reversion of the property to the grantors, their successors or assigns. This being the situation, the question is whether the transaction, the giving and acceptance by the city of the deed, involved the incurring by the city of "any indebtedness or liability in any manner or for any purpose" *with relation to the grantors, their successors or assigns,* within the meaning of section 18 of article XI of our constitution. If it did, admittedly, in the light of the facts alleged in the complaint,

the liability exceeded the income and revenue provided for the year 1919, the year in which the transaction was had.

Assuming the validity of the transaction between the parties apart from any question as to the effect of the constitutional provision, it seems clear that an obligation was imposed thereby upon the city, in favor of the grantors, their successors and assigns, to expend in the specified work at least five thousand dollars per annum for a period of years and until the completion thereof. To this extent the income and revenue of future years was attempted to be appropriated for the performance of this obligation in favor of the grantors, an obligation assumed by the city in consideration of the transfer to it of the property. Assuming the complete carrying out of its part of the agreement by the city, there will have been such an appropriation. The doing of this work, with a prescribed minimum expenditure therefor each year, was, as we have said, the purchase price for the land, payable in yearly installments, the grantors having fully performed their part by conveyance and delivery of the land. Notwithstanding the absence of any liability for damages for failure to perform, and the fact that the obligation could not be specifically enforced, there was an obligation in favor of and for the benefit of the grantors, involving the expenditure in a certain way, and for specified purposes, of future revenues of the city, accompanied by what was in substance a pledge of the property conveyed as security for its performance. That the matter was cast in the form of conditions subsequent is unimportant. In substance and effect the transaction was as we have stated it.

[1] So regarding the transaction, we are of opinion that it falls within the inhibition of section 18 of article XI of the constitution, which precludes any city from incurring "any indebtedness or liability in any manner or for any purpose" exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the qualified electors thereof. That there was a liability in favor of the grantors imposed on the city upon the acceptance by it of the conveyance seems clear. The ability of the creditor to enforce a claim by a judgment for money is not essential to a "liability" as that term is used in such constitutional provisions as ours. As the consideration of

the executed conveyance to the city there was an obligation in favor of the grantors to expend five thousand dollars yearly in the completion of the specified work, which, according to the complaint, would cost fifty thousand dollars, and the property that had been conveyed to the city was pledged for full performance of the obligation. The city must either expend all the money necessary to complete the work from its future revenues, or lose the property with all it may have paid to the time of loss in improving the same. Numerous cases cited holding that where a city acquires property subject to a mortgage or trust deed with a stipulation that the city is not to be held liable in any way for the payment of the debt thereby secured other than by the enforcement of the lien on the property, such debt constitutes a part of the indebtedness of the city within the meaning of that word as contained in constitutional provisions confining the indebtedness of the city within a prescribed limit, illustrate how such an indebtedness may be incurred without any means of enforcement other than loss of the property. In *Browne* v. *City of Boston,* 179 Mass. 321, [60 N. E. 934], the court said of such a transaction: "But the property, when conveyed, will be subject to the mortgages that have been placed upon it pursuant to the arrangement that has been made, and the city either will have to pay them, or submit to have the property taken from it by foreclosure proceedings. It will thus become indirectly liable for the amount secured by the mortgages, and the taxpayers will ultimately be obliged to pay it as contemplated. . . . The object of the statute is to protect the taxpayer by confining the indebtedness of a city within a prescribed limit. The manner in which the indebtedness is created is immaterial, if the result is to subject the city to a present liability, direct or indirect, which the taxpayers eventually will be called on to meet. It seems to us that such will be the result of the ingenious scheme that has been devised in the present case. We think the statute cannot be evaded in the manner proposed." (See, also, *Voss* v. *Waterloo Water Co.,* 163 Ind. 69, [106 Am. St. Rep. 201, 2 Ann. Cas. 978, 66 L. R. A. 95, 71 N. E. 208]; *Eddy Valve Co.* v. *Town of Crown Point,* 166 Ind. 613, [3 L. R. A. (N. S.) 684, 76 N. E. 536]; *Fidelity Trust & Guaranty Co.* v. *Fowler Water Co.,* 113 Fed. 560, 568; *Lesser* v. *Warren Borough,* 237 Pa. 501, [43 L. R. A.

(N. S.) 839, 85 Atl. 839].)    We have here the obligation to
expend certain specified sums annually, secured by the pro-
vision for reversion of the property in the event of non-
performance.    The words "any . . . liability in any manner
or for any purpose" in our constitutional provision are
words of broad import, and we think that, fairly construed,
they include such an obligation as the one here involved.

The facts of this case present what at first blush appears
a rather novel application of the constitutional provision, but
when the real transaction between the parties is fully un-
derstood, the matter appears simple enough.    We are not
concerned here with the indebtedness to be created in favor
of contractors, materialmen, and workmen when the city
each year contracts for the doing of certain work, or buys
material and employs labor for the doing of the same.
We have here simply the liability *to the grantors,* created
by the acceptance of the conveyance.    As to them, the trans-
action was simply one of sale and purchase, completely ex-
ecuted by the grantors, the consideration being the future
improvement by the city of the conveyed premises in a
specified way for the benefit of the grantors, their successors
and assigns, at an expenditure of at least five thousand
dollars per year.    Learned counsel for respondents admit
that "where a purchase is made upon the installment plan,
even though the only remedy for the enforcement by the
seller of the payments is the right to declare a forfeiture,
yet a debt has been created at the time the contract is en-
tered into for all the sums subsequently to be paid."    Such,
as we have said, was in substance this transaction.    That the
money was to be paid by the city to those actually doing
the work deemed by the grantors to be of sufficient benefit
to them to warrant them in making it the consideration for
their conveyance, instead of to the grantors themselves, is
immaterial.    It was the construction of the improvement at
the specified cost per year, presumably to the benefit of their
property, that constituted the consideration for their con-
veyance.    Likewise it is altogether immaterial, in so far as
the liability to the grantors is concerned, that the city will
own the improved park.

In the view we take of the nature of this transaction, it
is obvious that such cases as *McBean* v. *Fresno,* 112 Cal.
160, [53 Am. St. Rep. 191, 31 L. R. A. 794, 44 Pac. 358],
*Smilie* v. *Fresno,* 112 Cal. 311, [44 Pac. 556], and *Doland*

v. *Clark,* 143 Cal. 176, [76 Pac. 958], are in no way in point. Here the full liability to the grantors was created *upon the acceptance of the deed,* the entire consideration therefor having been furnished. The cases cited involved contracts for the furnishing to a city in the future of service, materials, etc., and it is held that no indebtedness or liability within the meaning of the constitutional provision is incurred until the furnishing of the service, materials, etc., the consideration for the payment to be made. The distinction is clear, and is recognized by many decisions. It is concisely stated in *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1, 20, [43 L. Ed. 341, 19 Sup. Ct. Rep. 77, see, also, Rose's U. S. Notes], as follows: "In the one case the indebtedness is not created until the consideration has been furnished; in the other (where the consideration on the other side is fully furnished at the time of the transaction) the debt is created at once, the time of payment being only postponed."

In support of the claim that the construction of the constitutional provision invoked by appellant is unreasonable in the light of its results, learned counsel for respondents say that to sustain it would mean that a city could not expend money on land granted on condition simply that it be maintained as a park or highway, etc.; in other words, that a city could not expend money on land conveyed solely for park or highway purposes. To our minds this result would not follow. That a city may accept land to be used by it for a specified purpose, and thereafter expend such money thereon as *it,* in the exercise of its discretion, deems proper in the use to which it is devoted, cannot be doubted. But that would be a very different case from this, wherein the doing of certain prescribed future work in a specified way and at a specified cost to the city per annum is made the consideration for the conveyance.

We are of opinion that the complaint stated a cause of action.

The judgment is reversed.

Shurtleff, J., Wilbur, J., Sloane, J., Lawlor, J., Lennon, J., and Shaw, J. concurred.

Rehearing denied.

All the Justices concurred.