[Civ. No. 19402.   Second Dist., Div. Three.   July 17, 1953.]

WILLIAM S. HART, JR., Appellant, v. THOMAS C. GOULD et al., Respondents.

Freston & Files, J. R. Files, Eugene D. Williams and Sydney Wetzler for Appellant.

Spray, Gould & Bowers, Harold W. Kennedy, County Counsel (Los Angeles), and John B. Anson, Deputy County Counsel, for Respondents.

WOOD (Parker), J.—Plaintiff sought a judgment declaring that a provision in the will of his father, William S. Hart, devising real property to the County of Los Angeles, is void; and declaring that the title to said property is vested in plaintiff as the sole heir. Defendants, County of Los Angeles and the coexecutors of the will of William S. Hart, answered the complaint and made a motion for judgment on the pleadings. The motion was granted, and the judgment was that plaintiff take nothing. Plaintiff appeals from the minute order granting the motion, and from the judgment.

It is alleged in the complaint as follows: William S. Hart died June 23, 1946. William S. Hart, Jr., is the sole heir of said decedent. The decedent owned various parcels of real property (particularly described) known as the Horseshoe Ranch. All of said parcels were acquired by decedent by virtue of conveyances from various grantors (named in the complaint), whose titles were derived by mesne conveyances from the original owner of said property, Antonio del Valle. Said del Valle acquired said property, in addition to other contiguous real property, pursuant to a certain grant executed by Juan B. Alvarado, Provisional Governor of the Department of California (then part of the Republic of Mexico), which deed is dated January 22, 1839, copy of which is attached to and made a part of the complaint. Said conveyance was executed by virtue of authority of a decree of the Constituent Assembly of the Republic of Mexico of August 18, 1824, a translation of which appears in a certain volume designated "United States Congress, Thirty-first Congress, First Session, House of Representatives Executive Document # 17, California and New Mexico . . ." published in 1850, containing said decree, in Document 17, Appendix 4, Report of H. W. Halleck, Monterey, March 1, 1849, as Secretary of State of the Territory of California, a copy of which (decree) is· attached to the complaint. Antonio del Valle held said title until his death. On February 2, 1848, certain real property, as well as all other property comprising what is now the State of California, was ceded by the Republic of Mexico to the United States pursuant to the Treaty of Guadalupe Hidalgo, which was signed February 2, 1848, ratified at Queretaro May 30, 1848, and proclaimed by Executive Procla-

mation on July 4, 1848. On September 9, 1850, the State of California was admitted to the Union, and on March 3, 1851 the Congress passed an act designated "An Act to Ascertain and Settle the Private Land Claims in the State of California," which provided for the creation of a commission to confirm existing land titles owned by Mexicans at the time the treaty became effective, and to respect the commitments thereof with respect to titles derived from the Provisional Governor and held by former citizens of Mexico. On September 2, 1852, the heirs of Antonio del Valle (whose names were stated in the complaint) filed with the United States Board of Land Commissioners a claim to the said real property, as well as to other contiguous property founded upon said Mexican land grant. Said grant was approved in all respects on January 2, 1855, by said board at Monterey, California, proceeding pursuant to said act of Congress. An appeal was taken to the United States District Court, and the appeal was dismissed by that court. On February 12, 1875, a confirmatory patent was issued to said vestees by the United States and was recorded March 18, 1875, in Los Angeles County, California.

It was further alleged in paragraph X of said complaint that said deed, upon which patent was thereafter issued, provides that said real property "cannot be devised for any mortmain purpose whatsoever, and that it cannot be devised except to living persons, and not for charitable, religious, educational, eleemosynary or public purposes"; that in spite of the said restriction which forbids the use of the property for mortmain purposes, the decedent, William S. Hart, purported to execute a will in violation of said provisions; a copy of the will is attached to the complaint and made a part thereof; the will was admitted to probate on July 26, 1946, and the proceedings for probate of the will are not final because a petition for revocation thereof is pending; by reason of the failure of decedent to effectively dispose of said property by will, plaintiff is entitled to the property regardless of the pending petition for revocation; the period for filing claims against the estate has expired, there are ample funds in the estate to pay all debts and charges against the estate, and therefore plaintiff is entitled to immediate possession of the property.

It was further alleged in paragraph XI of said complaint "that a controversy has arisen between the executors of said Estate [will], William R. McKay and Thomas C. Gould, and

with the Board of Supervisors of the County of Los Angeles with respect to plaintiff's claim to said real property," and by reason of the fact that the purported gift to said county purports to be for the purpose of mortmain, plaintiff contends that title to the property is vested in plaintiff as an heir at law of said decedent; that said county contends that it is entitled to the property under the will.

The grant or deed from Governor Alvarado to Antonio del Valle, a copy of which is attached to the complaint, provides in part: "Neither the grantee nor his heirs shall divide or transfer that which is adjudicated to him, or impose upon it ground rents, entailment, surety, mortgage or any other encumbrances even for a pious cause or transfer it in mortmain."

The will of William S. Hart, a copy of which is attached to the complaint, states that he gives and devises said real property to the County of Los Angeles upon condition that the property shall be forever used and maintained by the county and its successors in interest as a public park, and that the name of the park shall be "William S. Hart Park."

In the answer of the county, it is alleged that by mesne conveyances of title, set forth in the complaint, and upon the confirmatory patent, as set forth in the complaint, the fee title to the property was vested in William S. Hart and he had full power and legal right to transfer said property by will to the county. The county denied that any restriction upon the power of alienation of the property was validly imposed by the Mexican grant or by any other means.

The coexecutors admitted, in their answer, the allegations of the complaint with reference to: the grant or deed from Governor Alvarado to Antonio del Valle; and the issuance of a confirmatory patent, to the named heirs of del Valle, by the United States. It was also alleged in their answer that the contest to revoke the probate of the will resulted in a judgment against the contestant, and that said judgment is final.

Mortmain means: "Literally, dead hand; hence, the hand or possession of ecclesiastical corporations, ecclesiastics being in the early law deemed civilly dead; later, the possession of, or tenure by, any corporation which, by reason of the nature of corporations, may be perpetual." (Webster's Dict., Unabridged.) The definition of mortmain in the New Century Dictionary is: "In *law*, the condition of lands or tenements held without right of alienation, as by an ecclesiastical cor-

poration; inalienable possession." In Woerner's American Law of Administration (3d ed.), volume 3, it is said at page 1427: "The act popularly known as the Statute of Mortmain, more accurately the 'Charitable Uses Act,' prohibits the gift, conveyance, or settlement to or upon any person or body corporate of real property, . . . in trust or for the benefit of any charitable uses whatever, except by deed executed with certain formalities and enrolled a certain time before the donor's death, to take effect in possession for the charitable use, without power of revocation or reservation in favor of the donor. Under this statute, a devise to a charity in violation of its provisions does not vest the legal title, and the heir may recover at law."

Appellant contends that said provision in the Mexican grant that neither the grantee nor his heirs shall transfer the property in mortmain prohibits the transfer of the property to the county for park purposes, and that the provision in the will so devising the property is void. He argues that the restriction against transfer in mortmain was valid under Mexican law; that the change of sovereignty did not destroy the application of Mexican law to real property in California or affect existing titles; that under the Treaty of Guadalupe Hidalgo, in 1848 (about nine years after the grant to del Valle) between the United States and the Republic of Mexico, the United States agreed that land titles of Mexicans in the ceded territory shall be inviolably respected.

Respondents contend that the mortmain restriction in said grant is ineffectual. They argue that the mortmain restriction in the grant is merely a condition subsequent, restricting alienation and is repugnant to the interest created by the grant; the restriction is void under the provisions of section 711 of the Civil Code which provides that, "Conditions restricting alienation, when repugnant to the interest created, are void"; that following the Treaty of Guadalupe Hidalgo, the enjoyment of any title previously acquired should be determined by the laws of the United States, and any condition imposed upon the title by the laws of Mexico inconsistent with the laws of the United States or its public policy was annulled by the conquest of California in the war with Mexico; California does not have a mortmain statute or a policy favoring mortmain statutes; the alleged prohibition of transfer in the Mexican grant is superseded by the cession of said property to the United States and by the patent of the United States to the heirs of the grantee (del Valle) in

the Mexican grant; that plaintiff, not being a party in privity with the grantors and not claiming to derive title from any deed issued prior to the Mexican grant, has no power to bring this action and cannot make a collateral attack upon the patent of the United States.

The provision in the Mexican grant of 1839 to del Valle was a condition subsequent. A condition subsequent is: "A condition by the failure or nonperformance of which an estate already vested may be defeated." (Ballentine's Law Dict.) Section 707 of the Civil Code provides: "The time when the enjoyment of property is to begin or end may be determined by computation, or be made to depend on events. In the latter case, the enjoyment is said to be upon condition." Section 708 of said code provides: "Conditions are precedent or subsequent. The former fix the beginning, the latter the ending, of the right." It is not claimed that there was any breach of the condition subsequent until more than 100 years after the Mexican grant was made to del Valle. If there had been a breach of condition, prior to the conquest of California by the United States, then a proper party might have maintained, under the Mexican law, some form of action based upon failure to observe the mortmain provision. Under the treaty, the United States was obligated to respect and protect the land titles of Mexicans who then owned land in the conquered territory. There is no question here with reference to respecting or protecting such a title. The titles of del Valle and his heirs were upheld by the United States, as shown by the confirmatory decree of the Board of Land Commissioners. Any question as to the title to property, acquired prior to the conquest, is to be determined by reference to the Mexican law at the time the property was acquired. Any question, however, as to restraint or restrictions upon the use of property, acquired prior to the conquest, is to be determined according to American law. There is no provision in the treaty that the United States would continue restrictions on the use of property owned by Mexicans prior to the conquest, or that the United States would preserve for Mexico or any citizen of Mexico the right of forfeiture or any remedy based upon the mortmain provision. The mortmain provision, or condition subsequent, restrains alienation and is repugnant to the fee granted. The purpose of that provision or condition was to prohibit the doing of a certain act—the transfer in mortmain. Section 711 of the Civil Code, enacted in 1872 and in effect since that

time, provides that: ''Conditions restraining alienation, when repugnant to the interest created, are void.'' Said section did not apply retroactively, or at all, to divest anyone of a vested right. The mortmain provision, or condition subsequent, did not vest any right in del Valle or any other person or the Republic of Mexico. The section (711) merely precluded any action based upon said restriction as to the use of the land.

In *Fremont* v. *United States,* 58 U.S. (17 How.) 542 [15 L.Ed. 241], certain land, located in the Department of California (of the Mexican government), was granted in 1844 by the Republic of Mexico to Juan B. Alvarado, which grant included the following condition: ''He [grantee] shall not sell, alienate nor mortgage the same, nor subject it to taxes, entail, or any other incumbrance.'' In 1847, Alvarado sold the land to Colonel Fremont. In 1852, the Board of Land Commissioners confirmed the claim of title by Fremont. In 1855, the Supreme Court of the United States upheld the decision of the commissioners. In said case, the court stated at page 557 [58 U.S.] (p. 246, [15] L.Ed.): ''There can be no question as to the power of the Governor of California to make the grant. And it appears to have been made according to the regular forms and usages of the Mexican law. It has conditions attached to it; but these are conditions subsequent. And the first point to be decided is, whether the grant vested in Alvarado any present and immediate interest; and if it did, then second whether anything done or omitted to be done by him *during the existence of the Mexican government in California,* forfeited the interest he had acquired and revested it in the government. For if, at the time the sovereignty of the country passed to the United States, any interest, legal or equitable, remained vested in Alvarado or his assigns, the United States are bound in good faith to uphold and protect it.'' (Italics added.) It was also said in that case, at page 560 [58 U.S.] (p. 247, [15] L.Ed.): ''Regarding the grant to Alvarado, therefore, as having given him a vested interest in the quantity of land therein specified, we proceed to inquire whether there was any breach of the conditions annexed to it, *during the continuance of the Mexican authorities,* which forfeited his right and revested the title in the government.'' (Italics added.) It was also said therein, at page 564 [58 U.S.] (p. 249, [15] L.Ed.): ''But if this condition was valid by the laws of Mexico, and if any conveyance made by Alvarado would have forfeited the land

under the Mexican government as a breach of this condition, or if it would have been forfeited by a conveyance to an alien, it does not by any means follow that the same penalty would be incurred by the conveyance to Fremont.

"California was at that time in possession of the American forces, and held by the United States as a conquered country, subject to the authority of the American government. The Mexican municipal laws, which were then administered, were administered under the authority of the United States, and might be repealed or abrogated at their pleasure; and any Mexican law inconsistent with the rights of the United States or its public policy, or with the rights of its citizens, were annulled by the conquest. Now, there is no principle of public law which prohibits a citizen of a conquering country from purchasing property, real or personal, in the territory thus acquired and held; nor is there anything in the principles of our government, in its policy or its laws, which forbids it. The Mexican government, if it had regained the power, and it had been its policy to prevent the alienation of real estate, might have treated the sale by Alvarado as a violation of its laws; but it becomes a very different question when the American government is called on to execute the Mexican law. And it can hardly be maintained that an American citizen who makes a contract or purchases property under such circumstances, can be punished in a court of the United States with the penalty of forfeiture, when there is no law of Congress to inflict it. The purchase was perfectly consistent with the rights and duties of Colonel Fremont, as an American officer and an American citizen; and the country in which he made the purchase was, at the time, subject to the authority and dominion of the United States."

The restriction as to the use of the property herein, imposed by the Mexican grant, is inconsistent with American law and public policy. The mortmain provision in the Mexican grant is superseded by the cession of the property by Mexico to the United States, and by the patent of the United States to the heirs of the grantee (del Valle) in the Mexican grant. The mortmain provision in the grant is void under section 711 of the Civil Code.

The minute order and the judgment are affirmed.

Shinn, P. J., and Vallée, J., concurred.

. Appellant's petition for a hearing by the Supreme Court was denied September 15, 1953.