[Civ. No. 21899.   Second Dist., Div. Two.   May 27, 1957.]

Estate of WILLIAM S. HART, Deceased.   WILLIAM S. HART, JR., Appellant, v. COUNTY OF LOS ANGELES et al., Respondents.

S. V. O. Prichard and Joseph L. Reina for Appellant.

Harold W. Kennedy, County Counsel, Baldo M. Kristovich, Assistant County Counsel, Krystal & Paradise, Spray, Gould & Bowers and George W. Henderson, for Respondents.

RICHARDS, J. pro tem.*—This is an appeal by William S. Hart, Jr., the son of William S. Hart, deceased, from a judgment settling the executor's seventh and final account and report; decreeing, among other things, the final distribution of the decedent's estate to the county of Los Angeles and overruling appellant's 16 specific objections to the final account and petition for distribution.

The testator, William S. Hart, died on June 23, 1946, leaving a will executed September 9, 1944, which was duly admitted to probate on July 26, 1946. The decree of distribution here appealed was entered December 2, 1955, in accordance with the provisions of the decedent's will which made certain bequests, and, so far as here material provided:

"SECOND: I further declare that I have but one child, a son by the name of William S. Hart, Jr., who is the issue of my marriage to said Winifred Westover Hart. I have made no provision in this Will for my son for the reasons that I have amply provided for him during my lifetime.

"        .   .   .   .   .   .   .   .   .   .   .   .

"FOURTH: I hereby give, devise and bequeath to the County of Los Angeles, State of California, a body politic and corporate, (hereinafter sometimes referred to as 'the County'), for the uses and purposes, and upon and subject to the conditions, hereinafter set forth, all that certain real and personal property described as follows, to wit:

"[Description of property.]

"A. That the said real and personal property (hereinafter sometimes referred to as the 'Park') shall be forever used and maintained by the County and its successors in interest and estate, exclusively as a public park and pleasure grounds, and for exhibition purposes, for the amusement, recreation, health and pleasure of its inhabitants. That the Park shall be open to public use at all times subject to proper restrictions to be provided by the Board of Supervisors of the County. That a charge or fee shall never be made of the public for admittance to the said premises, provided, however, that the Board of Supervisors may fix and collect a nominal charge for the use

---

*Assigned by Chairman of Judicial Council.

of camping facilities located on the Park Property in an amount of approximately the cost of the public utilities likely to be used by the person to be charged.

"B. That the name of said Park shall be established by ordinance to be 'WILLIAM S. HART PARK,' and that 'WILLIAM S. HART PARK' shall be continued as the official name and designation of said Park.

"C. That, within twelve months from and after the date of the recordation of the decree of distribution distributing the said property to the County, the County shall

"(1) Construct and thereafter maintain at the present location of the main entrance to said property a plate on which shall be inscribed in letters of suitable size and character the words 'WILLIAM S. HART PARK'; and, that at a proper location on or adjacent to the Museum Property, place or erect a tablet on which shall be inscribed in letters of suitable size and character the following words:

'This Park has been dedicated
by
WILLIAM S. HART
for the benefit of the American Public
of every race and creed'

"D. That, within five years from and after the date of the recordation of said decree of distribution, the County shall

"(1) Lay out, construct and thereafter maintain roads and paths throughout the said property so as to give the public access to the various points and places of interest throughout the Park.

"(2) Construct and thereafter maintain comfort stations for the use of the public at convenient and proper places throughout the Park.

"(3) Construct and thereafter maintain picnic grounds at suitable locations with accommodations for cooking, tables and seats and drinking fountains.

"(4) Lay out, construct and thereafter maintain an adequate electric lighting system, irrigation system and storm drain throughout the Park.

"(5) Plant and thereafter maintain throughout the Park, at suitable places, for the purpose of ornamentation and flood control, plants, shrubs, trees, grass and flowers preferable [sic] indigenous to California.

"      .    .    .    .    .    .    .    .    .    .    .    .

"J. Whenever any of said property, or any part thereof, shall cease to be used as a park and for pleasure, amusement,

recreation, health and uses incident to the aforesaid uses according to the intents and meanings hereof, or if the said County, or its successors in interest or estate, shall at any time change the official name of said Park from 'WILLIAM S. HART PARK' to some other name or designation, or if the County, or its successors in interest or estate, shall fail, neglect or refuse to perform each or any of the other conditions hereby imposed, the said property shall, immediately upon the happening of either or any of said events, revert, and shall go and be distributed, to the State of California for the same uses and purposes and upon the same conditions imposed upon the State of California as are herein set forth and imposed upon the County.

"K. That, prior to the hearing before the Superior Court upon the final account and petition for distribution of my estate, the Board of Supervisors of the County shall advise my executors of its willingness to accept the property herein devised and bequeathed to the County for the uses and purposes and upon the conditions herein provided. In the event the County fails to so advise my executors prior to the hearing before the Superior Court upon the final account and petition for distribution of my estate, the said real and personal property shall go and be distributed to the State of California for the same uses and purposes and upon the same conditions imposed upon the State of California as are herein set forth and imposed upon the County.

"L. All the domestic animals which I may own at the time of my death shall be allowed to spend their remaining days in the Park and shall be properly fed and cared for at all times by the County.

"FIFTH: For the purpose of providing for the maintenance and upkeep of the said Park, I hereby give and bequeath to the County the sum of One Hundred and Fifty Thousand Dollars ($150,000.00), and such other sums of money as shall go and be distributed to the County under the provisions hereof, IN TRUST, for the following uses and purposes, and upon the following conditions, to-wit:

"  .   .   .   .   .   .   .   .   .   .   .   .

"C. The County shall have the right to use annually the sum of Ten Thousand Dollars ($10,000.00) of the principal and the accrued and collected income, of the Trust Estate for the purpose of aiding and assisting the County in defraying and carrying out and performing the conditions as expressed in par. Fourth hereof to be done and performed,

but I hereby declare it to be a condition of this Trust that the County shall not expend or obligate any portion of the principal or income of this Trust Estate in excess of the said amounts, and that it is a further condition of this Trust that the County shall not expend any portion of the said principal or income of the Trust Estate for any purpose whatsoever except as herein expressly authorized.

" . . . . . . . . . . . .

"SEVENTH: All the rest, residue and remainder of my estate of every kind or nature and wheresoever situate, including any property over which I may have any power of appointment, after paying all my just debts, all expenses of my last illness and burial, all estate, inheritance, income and other taxes payable from estate funds, and all administration costs, expenses, fees and commissions, as provided in paragraph Third, I hereby give, devise and bequeath and appoint to the County of Los Angeles, IN TRUST, to be added to the property and/or fund hereinabove specified in paragraph Fifth hereof, and to be used and devoted as a part of said property and/or fund and under and subject to the same terms and conditions, and for the same uses and purposes, provided for in said paragraph Fifth."

The park property was appraised at approximately $257,000 and the residue of the estate, after payment of taxes, commissions and fees, passing to the county of Los Angeles under the general residuary bequest, consists of cash, securities and other personal property having a total appraised value of approximately $586,000.

The lapse of over nine years between the admission of the will to probate and the entry of the final decree of distribution is explained in part by the time consumed in disposing of the various aspects of litigation in the estate which have been before this court on five previous occasions, as follows: *Estate of Hart* (1949), 92 Cal.App.2d 691 [208 P.2d 59] (Appeal by William S. Hart, Jr., from order denying change of venue. Appeal dismissed on motion) ; *Estate of Hart* (1951), 107 Cal. App.2d 60 [236 P.2d 884] (Appeal by William S. Hart, Jr., from adverse judgment in will contest. Affirmed) ; *Estate of Hart* (1951), 107 Cal.App.2d 58 [236 P.2d 891] (Appeal by executors from order striking cost bill. Affirmed) ; *Hart* v. *Gould* (1953), 119 Cal.App.2d 231 [259 P.2d 49] (Appeal by William S. Hart, Jr., from adverse judgment in action to declare void provision of the will devising real property to County of Los Angeles as violative of Mexican grant. Af-

firmed) ; and *Estate of Hart* (1953), 119 Cal.App.2d 310 [259 P.2d 703] (Appeal by William S. Hart, Jr., from order assessing costs of will contest. Affirmed).

Three basic questions are presented by this appeal:

(1) Did the charitable bequest of the park property fail as to the County of Los Angeles by reason of any violation of section 18 of article XI of the Constitution?

(2) Did the decedent die intestate as to the park property oil, gas and mineral rights?

(3) Is the residuary bequest to the county of Los Angeles void as a charitable trust?

### Park Property Bequest

The decedent's will, as we have noted, bequeaths the park property to the county of Los Angeles and imposes a condition that within five years from and after the date of the recordation of the decree of distribution, the county shall make and maintain certain improvements thereon. Another condition of this bequest is that, prior to the hearing upon the final accounting and petition for distribution, the board of supervisors of the county shall advise the executors of "its willingness to accept the property herein devised and bequeathed to the County for the uses and purposes and upon the conditions herein provided." The will further bequeaths to the county of Los Angeles the sum of $150,000 together with the residue of the estate for the purpose of providing for the maintenance and upkeep of the park and provides that the county shall have the right to use annually the sum of $10,000 of the principal and accrued and collected income of the entire trust estate for the purpose of aiding and assisting the county in defraying and carrying out and performing the conditions imposed on the county to make and maintain the specified improvements. The will further provides that if the county shall fail to perform the conditions adverted to, the park property shall revert to the State of California for the same purposes and upon the same conditions. The court found that on November 5, 1947, the Board of Supervisors of the County of Los Angeles adopted a resolution notifying and advising the executors of the estate of "the willingness of this Board and the County of Los Angeles to accept, and they do hereby accept" the property bequeathed by decedent's will for the uses and purposes and upon the conditions provided in the will, and further found that on or about November 12, 1947, and prior to the hearing on the petition for distribution, a copy of said resolution was served on the exe-

cutors of the estate. It was further found that the budget of the county of Los Angeles for the fiscal year 1947-1948 contained no appropriation of money for the purpose of making improvements on the park property and that, as of the date of the hearing on the petition for final distribution, all moneys appropriated by the county for the fiscal year 1947-1948 had been exhausted and that no sums remained available out of the funds of that year. There was an additional finding that no appropriations were budgeted by the county for the improvement of the park property in any year thereafter until the fiscal year 1954-1955, the budget for that year providing an appropriation of $118,248 for the capital project of making improvements on the park property, and the budget for the succeeding year contained a similar appropriation.

It is the appellant's contention that the resolution of the board of supervisors adopted on November 5, 1947, constituted the incurrence of an "indebtedness or liability" under section 18 of article XI of the Constitution and inasmuch as no appropriation was budgeted in that year to cover the cost of making the improvements to the park property required by the will to be made within five years after the recordation of the decree of distribution, the bequest of the park property failed as to the county of Los Angeles and the court erred in making distribution thereof to the county. We are satisfied that this contention is untenable.

Section 18 of article XI of the Constitution provides: "No county . . . shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year" without the assent of two-thirds of the electors.

In the first place, appellant has misconceived the nature of the proceeding involved and the inapplicability of a violation of the constitutional provision, if any, to the probate proceeding. ■ The court, having found that the board of supervisors had advised the executors of its willingness to accept the bequest of the park property prior to the hearing on the decree of distribution, was obliged to distribute the park property to the county under the will and to provide in the decree that upon the failure of the county to comply with the conditions subsequent, the property should revert to the State of California for the same purposes and upon the same conditions. "As distinguished from the settlement of the estate, whatever additional legal business connected with the administration of the affairs of the estate may require judicial

attention must ordinarily be administered in another forum. It is only when authorized by some express statute that the probate court, sitting as such, and disassociated from the Superior Court, may entertain matters of a nature distinct from the settlement of estates of deceased persons'' (*Parkman* v. *Superior Court,* 77 Cal.App. 321, 323 [246 P. 334]). As an example, the court sitting in probate is without jurisdiction to construe the Retail Sales Tax Act as it might apply to a probate sale (*Estate of Schneider,* 62 Cal.App.2d 463 [145 P.2d 90]). ''It would seem to be well settled that while the superior court is a court of general jurisdiction, the powers which it exercises in proceedings in probate are entirely statutory, and that in the administration and distribution of estates it exercises a special limited jurisdiction, and that in the exercise of such jurisdiction it is not authorized, in the absence of express statutory authority, to determine controversies which do not strictly arise within the course of its probate procedure'' (*Estate of Polito,* 51 Cal.App. 752, 754 [197 P. 976]). A violation of the constitutional provision would not render the testamentary bequest void but would only prevent the county from expending current revenue to carry out the conditions of the bequest after the entry of the decree of distribution, and that was not a matter for the determination by the probate court in this proceeding. ■ We are aware of no authority holding that the court sitting in probate is precluded from making a distribution of a devise containing a condition subsequent on the ground that the devisee, subsequent to a distribution of the estate, may be prohibited from the performance of the condition.

■ Secondly, we are of the opinion that the resolution adopted by the county of Los Angeles in 1947 of its willingness to accept the charitable devise of the park property did not constitute the incurring of an ''indebtedness or liability'' within the purview of said section 18. ''The quoted words [indebtedness or liability] obviously refer only to a legally enforceable obligation'' (*City of Oxnard* v. *Dale,* 45 Cal.2d 729, 735 [290 P.2d 859]). ■ Whereas the title of the property devised to the county vested upon the testator's death in 1946 subject to the administration of the estate (Prob. Code, § 300), the right to possession was deferred until the distribution of the estate (*Trippet* v. *State,* 149 Cal. 521, 530 [86 P. 1084, 8 L.R.A.N.S. 1210]; *Estate of Piercy,* 168 Cal. 750, 753 [145 P. 88]), and under the terms and conditions of paragraph Fourth of the will, the duty to make the required improve-

ments within five years after distribution or suffer a reverter of the property to the state commenced upon the recordation of the decree of distribution. At the time of the adoption of the resolution in 1947, the ultimate distribution of the property to the county was contingent upon the will not being set aside by a contest after probate, which was in fact made, and it was also contingent upon the park property not being removed as an asset of the estate, as was in fact attempted.

*Chester* v. *Carmichael,* 187 Cal. 287 [201 P. 925], which appellant contends is decisive of the present case, was an appeal from a judgment sustaining a demurrer to a taxpayers' suit to enjoin the city of Sacramento from carrying out the conditions of a grant of land to the city for park purposes. The complaint therein alleged in substance that in 1919 a conveyance of certain land for park purposes was accepted by the city, the conveyance reciting that it was executed in consideration of the covenants and conditions expressed therein and certain conditions subsequent. The conditions expressed were that the city should maintain the premises as a public park and should make certain permanent improvements within five years and should expend a minimum of $5,000 each year until the required improvements were completed, and in the event of the failure of the city to comply with the conditions the property should revert to the grantors. It was further alleged that the cost of the required improvements would exceed $50,000 and that the moneys incident to the proposed work would be paid out of the revenue received in 1920 and subsequent years and that there was no assent by the electors to the carrying out of the proposed plan. In holding that the complaint stated a cause of action, the court held that the transaction fell within the inhibition of section 18 of article XI of the Constitution for the reason that a liability to the grantors was created by the city's acceptance of the conveyance and as to the grantors, the transaction was simply one of sale and purchase, completely executed by the grantors, the consideration being the future improvements to be made by the city of the conveyed premises, and the court said at page 294: "Here the full liability to the grantors was created *upon the acceptance of the deed,* the entire consideration therefor having been furnished." In distinguishing *McBean* v. *City of Fresno,* 112 Cal. 159 [44 P. 358, 53 Am.St.Rep. 191, 31 L.R.A. 794]; *Smilie* v. *Fresno County,* 112 Cal. 311 [44 P. 556]; and *Doland* v. *Clark,* 143 Cal. 176 [76 P. 958], which hold that a municipality may contract for the furnishing of

services or materials *in futuro* without violating the constitutional inhibition, the court cited *Walla Walla* v. *Walla Walla Water Co.*, 172 U.S. 1 [19 S.Ct. 77, 43 L.Ed. 341], as follows: "In the one case the indebtedness is not created until the consideration has been furnished; in the other (where the consideration on the other side is fully furnished at the time of the transaction) the debt is created at once, the time of payment being only postponed." The manifest rationale of the Carmichael case is that the acceptance of the conveyance in 1919 constituted the receipt of the entire consideration for the performance of the conditions imposed and that consequently an obligation from the city to the grantors arose *eo instanti*. The doctrine of the Carmichael case has no application to the state of facts here presented. Carmichael was an *inter vivos* transaction, consummated by the delivery of the grant and the acceptance thereof by the city. ▮ The instant case involves a charitable bequest of real property, title to which vested upon the testator's death and the beneficial use of which was deferred until the distribution of the testator's estate. No consideration of any kind passed to the county of Los Angeles in 1947 when it passed the resolution of willingness to accept the charitable bequest and the resolution so adopted is not violative of section 18 of article XI "because it does not create a financial liability, measurable in terms of the [county's] annual income." (*City of Oxnard* v. *Dale*, *supra*, p. 736).

### Intestacy as to Oil Rights

▮ Appellant contends that the decedent died intestate as to the oil, gas, and mineral rights in the park property, and since the appellant is the only heir, the court erred in not distributing such rights to him. His argument on this point is that inasmuch as a land owner does not own the oil in place, but rather, has only an exclusive right on his premises to drill for oil and gas, if he conveys the land subject to a condition that the grantee shall not use the land for the purpose of development of oil and gas, the grantor has in effect excepted from the grant the right to drill for oil, gas, or minerals. This contention is untenable. Probate Code, section 120, provides, "A devise of land conveys all the estate of the testator therein which he could lawfully devise, unless it clearly appears by the will that he intended to convey a less estate." ▮ The fact that a testator makes a will raises a presumption that he intended to dispose of all of his property (*Estate of Olson*, 144 Cal.App.2d 694, 696-697 [301 P.2d 501];

*Estate of Olsen,* 9 Cal.App.2d 374, 379 [50 P.2d 70]) and wherever a testamentary provision may be given either of two meanings, that meaning should be given to it which will prevent intestacy, either entire or partial (*Estate of Akeley,* 35 Cal.2d 26, 29 [215 P.2d 921, 17 A.L.R.2d 647]; *Estate of Duncan,* 145 Cal.App.2d 612, 615 [302 P.2d 892]; *Estate of Carroll,* 138 Cal.App.2d 363, 369 [291 P.2d 976]).

The land owner's exclusive right to drill for petroleum products is part of his fee estate and under a devise of the fee all of those rights are conveyed as an incident to the devise except such rights as have been previously transferred or are reserved or excepted by the instrument of transfer. (*Standard Oil Co.* v. *J. P. Mills Organization,* 3 Cal.2d 128, 132 [43 P.2d 797]; *Brown* v. *Copp,* 105 Cal.App.2d 1, 6 [232 P.2d 868].)

Paragraph Fourth of the testator's will begins: ''I hereby give, devise and bequeath to the County of Los Angeles, . . . all that certain real . . . property described as follows . . . .'' Manifestly this is a devise of the fee simple estate upon various conditions, one of which is that the property shall not be used for business purposes or for the exploration for oil. A deed or devise subject to a condition limiting the use of the granted or demised property is a transfer of the fee estate subject only to the possibility of a reverter upon breach of the condition. ''[W]hen the grantor conveys the fee simple on condition subsequent, he has no actual *estate* remaining with him. The grantee takes the entire estate of the grantor, and unless he breaches the conditions is in the same position as an owner in fee simple absolute. The interest of the grantor in such case is not, strictly speaking, a residue of the estate left in him; it is merely a right or power to terminate the estate of the grantee and retake the same, if there is a breach of condition'' (*Parry* v. *Berkeley etc. Foundation,* 10 Cal.2d 422, 425 [74 P.2d 738, 114 A.L.R. 562]).

### Is the Charitable Trust Void

Appellant's first contention on this point is that the trust created by paragraphs Fifth and Seventh of the will is void for the reason that the trust is not limited to charitable purposes because (a) the county of Los Angeles is the only beneficiary of the trust, and (b) the feeding and caring for domestic animals is not a charitable purpose, and hence the decedent died intestate as to the ''trust estate.''

Paragraph Seventh bequeaths the residue of the estate to the county of Los Angeles, in trust, to be added to the be-

quest in paragraph Fifth and for the uses and purposes and upon the same terms and conditions set forth in paragraph Fifth, which in turn bequeaths to the county of Los Angeles the sum of $150,000, in trust, for the purpose of providing for the maintenance and upkeep of the park, devised to the county of Los Angeles by paragraph Fourth of the will. In support of this contention, appellant argues that paragraphs Fifth and Seventh are each self-contained and that in determining the validity of the trust therein created we may not look to any other part of the will. This hypothesis is directly contrary to the statutory rule that all parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole (Prob. Code, § 103). Moreover, it is clear from the will itself that the bequests in paragraphs Fifth and Seventh are but a part of the testator's general scheme or plan of a charitable devise of the park property as provided for in paragraph Fourth together with money for its maintenance and upkeep as provided by paragraphs Fifth and Seventh. "[I]ndefiniteness in the beneficiaries of a charitable trust is not only not an objection to its validity, but, as a rule, is of the essence of all charitable trusts of a public or *quasi*-public character" (*Collier* v. *Lindley,* 203 Cal. 641, 652 [266 P. 526]). ▪ Conceding this principle, petitioner urges that in the creation of a charitable trust it is essential that the class (as distinguished from the members comprising the class) be established with certainty. (*Estate of Hinckley,* 58 Cal. 457; *Estate of Sutro,* 155 Cal. 727 [102 P. 920]; *Estate of Vance,* 118 Cal.App. 163 [4 P.2d 977]; *Estate of Peabody,* 21 Cal.App.2d 690 [70 P.2d 249].) That this is the law admits of no doubt; however, we are convinced that the requirement of the ascertainment of the class of beneficiaries is adequately met in the instant matter upon construing the decedent's testamentary plan or scheme as a whole, for a public trust arises by operation of law where a municipal corporation accepts a grant of real property for park purposes (*People* v. *Park & Ocean R. R. Co.,* 76 Cal. 156, 161 [18 P. 141]; *Archer* v. *Salinas City,* 93 Cal. 43, 51 [28 P. 839, 16 L.R.A. 145]; *Slavich* v. *Hamilton,* 201 Cal. 299, 302 [257 P. 60]), from which it follows that there is an ascertainable class of beneficiaries under such a charitable grant—namely the public in general. ▪ The fact that the county of Los Angeles as a body politic will also share in the benefits of the charitable trust in no way vitiates the trust, as gifts in aid of governmental purposes are uniformly held to be for chari-

table purposes (*McKevitt* v. *City of Sacramento*, 55 Cal.App. 117 [203 P. 132] ; 14 C.J.S. p. 442; Scott on Trusts, § 373; Rest., Law of Trusts, § 373; and see Anno., 50 A.L.R. 593, p. 594). The trial court therefore properly concluded that the devises and bequests to the county of Los Angeles are for the benefit of that county as a body corporate and politic and its inhabitants and also for the benefit of the American public of every race and creed, as contemplated by the testator in paragraph Fourth, subparagraph C(1) of his will.

In the devise of the park property, the will provides that the domestic animals owned by the testator at the time of his death shall be kept in the park and properly fed and cared for by the county. Petitioner contends that the maintenance of animals is not a charitable purpose and that the charitable trust is therefore void in its entirety. After nearly ten years of litigation, it appears that at the time the final accounting and petition for distribution was filed on January 10, 1955, there were then surviving two dogs, one burro, one mare, and six horses. How many of these animals have since passed away we are not advised. In *Estate of Coleman,* 167 Cal. 212 [138 P. 992, Ann.Cas. 1915C 682], the decedent's will contained a $30,000 bequest to the city of Sacramento to be used in erecting a suitable fountain for the benefit of thirsty animals and birds. The court found this to be a charitable use, saying at page 214: "It is not necessary, however, that the persons constituting the general public be the direct beneficiaries of the gift. 'Gifts to benefit man through the medium of benefiting animals are good charities.' " In any event, the decedent's will contained a severability clause, and it is a well-established principle that the presence of an invalid provision in a will does not render the entire will void where it appears from a construction of the entire will that the valid provisions are so far independent from the invalid provision that the latter can be eliminated without interfering with the main scheme of the testator. (*Estate of Van Wyck,* 185 Cal. 49, 62 [196 P. 50] ; *Estate of Sewall,* 14 Cal.App.2d 554, 555 [58 P.2d 744].)

Petitioner's final contention as to the charitable devise and bequest is that the will makes no provision as to the distribution of the "trust estate" in the event both the county of Los Angeles and the State of California default in the acceptance of the trust or breach the conditions thereof and that, therefore, the decedent died intestate as to the trust estate upon the happening of such a contingency and the court

286

erred in not so providing. Petitioner's argument here is totally unsupported by the citation of any authority. As heretofore pointed out, it is obvious that the decedent's primary intent as expressed by his will was to devote the park property and the residue of his estate to a charitable use. The court so found and we agree. In the first place, we may presume that the public officials of both the county and the state will perform their duties and, second, a court of equity will not allow a gift for charitable uses, otherwise valid, to fail for want of a trustee but will, if necessary, appoint a trustee to carry out the charitable purpose expressed by the donor. (*People* v. *Cogswell*, 113 Cal. 129, 141 [45 P. 270, 35 L.R.A. 269] ; *Estate of McDole*, 215 Cal. 328, 332 [10 P.2d 75] ; *In re Los Angeles County Pioneer Society*, 40 Cal.2d 852, 864 [257 P.2d 1].)

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 24, 1957.